**Capstone** Law
Protecting What You Value Most

July 23, 2014

**By ECF**
Honorable Naomi Reice Buchwald
United States District Judge
United States Courthouse
500 Pearl St.
New York, NY 10007-1321

Re: U.S. Bank National Association v. Commonwealth Land Title Ins. Co., Civ. No. 13 CIV 7626

Dear Judge Buchwald:

I represent U.S. Bank National Association ("U.S. Bank") in the above-referenced case. Please accept this letter in opposition to Commonwealth Land Title Insurance Company's ("Commonwealth") letter-motion seeking to implead 10 new third-party defendants, including ANM Funding LLC and four of its individual employees, the law firm of Lowenthal & Kaufman, P.C. (the "Lowenthal firm") and its principal, Martin Kaufman, Norman Tepfer, the notary, Sameul Gluckman, the appraiser, and Roland Fields. Commonwealth's joinder request should be denied because Commonwealth has been derelict in bringing its motion, the joinder of 10 third-party defendants would unnecessarily complicate this case and add expense, the third-party defendants will be prejudiced by late joinder, and Commonwealth will not be prejudiced if its motion is denied.

This case is a straight-forward breach of contract claim brought by U.S. Bank to enforce Commonwealth's obligation to indemnify it under a lender's title insurance policy. The title insurance policy requires Commonwealth to indemnify U.S. Bank against any loss it suffered "by reason of a defect in title" caused by "forgery, fraud…or impersonation," among other reasons. There is no dispute between the parties that U.S. Bank's mortgage is invalid because it was procured through fraud and impersonation. Someone falsely held herself out to be the owner of the property, when in fact, the owner was deceased. Because the mortgage is invalid, U.S. Bank was unable to foreclose on it, and therefore, suffered a loss of $367,250, representing the value of the mortgage.

I.      **Legal Standard For Motion To Implead Third Party Defendants**

Federal Rule of Civil Procedure 14(a) permits the service of a third-party summons and complaint to join third-parties for the purpose of asserting claims for contribution or indemnity. Fed. R. Civ. Proc. 14(a). The rule permits the service of a third-party summons within 14 days after service of the original answer, or thereafter with leave of court. Id. This Court's Case Management Plan and Scheduling Order afforded Commonwealth until March 31, 2014 to join additional parties without leave of Court. (Doc. 13)

Rule 14(a) allows a defendant to implead a third-party "who is or may be liable ... for all or part of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. Proc. 14(a). In order to implead a third-party under this Rule, a defendant must allege a basis for passing on to the third-party all or part of the liability asserted against the defendant. See Broadcast Music, Inc. v. Hearst/ABC Viacom Entertainment Serv., 746 F.Supp. 320, 330 (S.D.N.Y.1990); Republic Nat'l Bank v. Eastern Airlines, Inc., 639 F.Supp. 1410, 1419 (S.D.N.Y.1986), aff'd, 815 F.2d 232 (2d Cir.1987).

The question of whether leave to assert third-party claims should be granted after the Rule 14(a) deadline is left to the sound discretion of the trial court. In deciding whether to grant leave to join third party defendants, courts consider (1) whether the movant deliberately delayed or was derelict in filing its motion; (2) whether impleading would delay or unduly complicate the trial; and (3) whether impleading would prejudice the third party defendants. See In re Agent Orange Prod. Liab. Litig., 100 F.R.D. 778, 780-81 (E.D.N.Y. 1984); E. F. Hutton & Co., Inc. v. Jupiter Dev. Corp. Ltd., 91 F.R.D. 110, 113 (S.D.N.Y. 1981) (denying impleader motion where claimant was aware of proposed third-party's role at early date and where discovery was already completed).

## II.    The Court Cannot Evaluate Whether Commonwealth's Third-Party Claims Have Merit Because Commonwealth Has Presented No Draft Third-Party Complaint.

This Court should deny Commonwealth's request for leave to join third-party defendants because Commonwealth has presented no draft pleading that would allow the Court to evaluate the merits of Commonwealth's proposed claims. Commonwealth's letter-motion does not explain the factual and legal basis for each of the proposed third-party defendants' liability to Commonwealth.

## III.    Commonwealth's Delay In Seeking To Join Third-Party Defendants Is Inexcusable.

U.S. Bank filed this action nine months ago, on October 31, 2013. U.S. Bank granted to Commonwealth an extension of its deadline to answer the complaint and Commonwealth served its answer on December 13, 2013. This Court's Case Management Plan and Scheduling Order, filed on January 15, 2014, provided a March 31, 2013 deadline to join parties and to assert additional causes of action without leave of court. (Doc. 13) Although Commonwealth has known of facts giving rise to its proposed third-party claims since 2009, it failed to seek to join additional parties for nine months since this case was commenced. Commonwealth can offer no reasonable excuse for its delay.

### A.    Commonwealth Knew Of Facts Supporting Third Party Claims Before This Case Was Commenced.

Commonwealth contends that it learned of facts giving rise to its third-party claims in May 2014, but that assertion is demonstrably false. Commonwealth has known of facts that ostensibly support its right to contribution or indemnity since well before this case was commenced.

U.S. Bank first tendered a title insurance claim to Commonwealth on March 25, 2009. U.S. Bank's tender letter enclosed a copy of Laura Fields's death certificate, showing that she was deceased at the time of the closing. In May of 2009, U.S. Bank provided a complete copy of its loan origination file to Commonwealth. U.S. Bank also provided Commonwealth with copies of cancelled checks and wire transfers showing how all of the closing funds were disbursed by the Lowenthal firm. Commonwealth also retained its own counsel, Helmut Borchert, to conduct an independent investigation into the circumstances surrounding the loan at issue. Mr. Borchert retained independent investigators to investigate the causes of the mortgage fraud underlying U.S. Bank's title claim. On March 1, 2012, Mr. Borchert wrote to U.S. Bank denying its title insurance claim. Commonwealth's own claim denial letter sets forth most of the facts upon which Commonwealth now predicates its desire to join these additional parties. (Exhibit A).

Regarding the Lowenthal firm, Commonwealth's claim denial letter clearly demonstrates that it knew, based on its receipt of the HUD-1 settlement statement and checks issued by the Lowenthal firm, that the Lowenthal firm's disbursement of closing funds was not consistent with the HUD-1 statement. Furthermore, in its Answer to U.S. Bank's Complaint, Commonwealth defended on the basis that the Lowenthal firm was responsible for U.S. Bank's loss (See Ans. ¶¶ 10 & 14 at Doc. 10). Finally, by email dated January 9, 2014, Commonwealth's counsel expressed his view that the Lowenthal firm engaged in fraudulent conduct related to the closing. (Exhibit B).

All of the information that Commonwealth now claims support joinder of Roland Fields came from Laura Fields's death certificate, a document that Commonwealth has had since at least May of 2009, when U.S. Bank first tendered its title insurance claim to Commonwealth.

Likewise, Commonwealth knew about facts supporting the potential joinder of ANM Funding before this case was commenced. U.S. Bank's loan origination file, received by Commonwealth in May 2009, contained documents showing ANM Funding's role in the closing. Furthermore, before it denied U.S. Bank's claim, Commonwealth conducted an independent investigation which revealed that ANM Funding had falsely reported Laura Fields's employment status. Furthermore, Commonwealth listed by name each of the ANM Funding personnel that it now seeks to join as potential witnesses on its initial disclosure dated January 28, 2014. (Exhibit C).

Commonwealth's effort to point to documents that were produced in May 2014 as the linchpin of its third-party claims is disingenuous. Commonwealth was well aware of facts supporting its potential third-party claims before this lawsuit was commenced. Commonwealth has offered no explanation for its delay in seeking to assert these claims.

**B.      Commonwealth Chose Not To Serve Discovery Until <u>After</u> The Deadline To Join Parties Had Passed.**

Commonwealth claims that it was unable to meet this Court's March 31, 2014 deadline to join parties because it did not receive documents from U.S. Bank until May 30, 2014. First, as argued above, Commonwealth had more than sufficient information, before this case was even commenced, to assert contribution or indemnity claims against third-parties. Second, assuming *arguendo* that Commonwealth needed additional information before asserting these claims, it did not timely pursue that information. In fact, Commonwealth's motion fails to mention that the reason it did not receive additional documents from U.S. Bank until May 2014 was because it did not serve U.S. Bank with requests for documents or interrogatories until April 21, 2014, almost a month after this Court's joinder deadline had passed. U.S. Bank responded to Commonwealth's requests in a timely manner by serving responses (including responsive documents) on May 23, 2014.

**C.      Even After Receiving Additional Documents In May, Commonwealth Did Not Diligently Seek To Join Parties.**

Assuming *arguendo* that the documents U.S. Bank produced in May 2014 were critical to Commonwealth's ability to assert claims for indemnity and contribution (a fact U.S. Bank vehemently denies), Commonwealth still made no effort to join third-parties. Instead, Commonwealth waited nearly two months, until after the completion of considerable written discovery and 4 depositions, to seek leave to assert third party claims.

This case should not be further delayed because of Commonwealth's lack of diligence in pursuing its claims. Commonwealth plainly had sufficient evidence available to it at the earliest possible point to allow it to assert third-party contribution and indemnity claims. Commonwealth has failed to articulate any circumstances that justify its delay of nine months in seeking to assert these claims.

**IV.      <u>Impleading 10 Third-Party Defendants Will Delay And Unnecessarily Complicate This Case.</u>**

There can be no doubt that impleading 10 third-party defendants at this late point in discovery will unnecessarily delay the case. Commonwealth concedes this point, arguing that a 90-day delay should be expected. This estimate seems far too short, particularly in light of the amount of time it has taken to conduct discovery thus far with only two parties in this case. It is estimated that the addition of these parties at this stage will require a delay of at least six months.

This Court will recall that Commonwealth's delay in providing responses to U.S. Bank's discovery requests and scheduling depositions has already necessitated an extension of discovery and motion deadlines, as reflected in this Court's Amended Case Management Plan and Scheduling Order filed on May 16, 2014 ("**Amended Schedule**"). (Doc. 21) The Amended

Schedule set an August 29, 2014 deadline to complete discovery and a September 30, 2014 deadline to file and serve dispositive motions. U.S. Bank strongly opposes any additional delays.

The addition of 10 third-party defendants will also unnecessarily complicate what is a straight forward breach of contract dispute. U.S. Bank's claim against Commonwealth is predicated on the fact that a mortgage was fraudulently signed. See Countrywide Home Loans, Inc. v. United Gen. Title Ins. Co., 109 A.D.3d 950, 951 (N.Y. App. Div. 2013) (holding that a lender's inability to enforce a mortgage because the mortgage loan was procured by fraud is a covered title defect under a title insurance policy). Commonwealth conceded during its recent deposition that the risk of a borrower being dead at the time of closing is a covered risk under the title insurance policy.

Because the facts supporting coverage are undisputed, the only thing in dispute between the parties are the merits of Commonwealth's defenses. Each of Commonwealth's defenses are contractual in nature, and arise under the language of the title insurance policy. First, Commonwealth claims that U.S. Bank failed to cooperate with its investigation of the claim by producing documents prior to the commencement of the lawsuit. Second, Commonwealth claims that certain other contractual exclusions apply relating to whether and to what extent U.S. Bank, or its agent knowingly participated in the fraud. Commonwealth claims that the Lowenthal firm was U.S. Bank's "settlement agent," and that its actions should be imputed to U.S. Bank.

The addition of 10 third-party defendants will convert this case from a straight-forward breach of contract case into a complex multi-party fraud and conspiracy case. The third-party defendants will likely assert cross-claims against each other, bring motions to dismiss, and engage in voluminous discovery and multiple additional depositions.

Furthermore, the addition of 10 third-party defendants to this case will unnecessarily complicate the case by necessitating that Commonwealth prove the culpability of each of the alleged participants in the fraud. See Federal Deposit Insurance Corp. v. National Surety Corp., 13 F.R.D. 201, 203 (E.D.Wis.1950) (impleader denied where presence of third party would "obscure and confuse the efforts of plaintiff to establish its claim"), cited by In re Agent Orange Prod. Liab. Litig., 100 F.R.D. at 781. This testimony is expected to add weeks to the trial, and would not otherwise be necessary for Commonwealth to defend against U.S. Bank's claim. Commonwealth's defense requires only that it prove that the Lowenthal firm was U.S. Bank's agent, and that they knowingly participated in the fraud. Commonwealth's defense does not require proof concerning the other nine proposed third-party defendants.

Finally, allowing the addition of third-party claims at this stage will substantially and needlessly increase U.S. Bank's cost to pursue its claim for $367,250. U.S. Bank will have to pay counsel to attend extra depositions and additional trial days dedicated solely to Commonwealth's effort to prove each of the 10 third-party defendants' role in the fraudulent scheme.

U.S. Bank's ability to have its claims decided have already been delayed by Commonwealth's failure to respond to discovery on time. U.S. Bank respectfully asks the Court to deny

Case 1:13-cv-07226-NRB Document 23 Filed 07/25/14 Page 6 of 23

Commonwealth's motion in order to ensure an orderly and timely adjudication of U.S. Bank's claims. U.S. Bank also asks the Court to take this action in order to avoid subjecting U.S. Bank to the unnecessary expense of participating in third-party claims that do not bear on U.S. Bank's right to recover under the insurance contract.

## V.     Third Party Defendants Will Be Prejudiced If Joined In This Case.

Commonwealth's delay in seeking to join these additional parties has virtually deprived them of the ability to meaningfully participate in discovery. Pursuant to this Court's Amended Case Management Plan and Scheduling Order dated May 16, 2014, discovery concludes on August 29, 2014. This is plainly an insufficient amount of time for the third-party defendants to meaningfully participate in discovery.

Furthermore, the third-party defendants will be prejudiced by their inability to participate in depositions that have already been taken in this case. Commonwealth claims to have learned of facts supporting impleader in May 2014, but decided not to seek to implead these third-parties until after last week's depositions of Commonwealth and the Lowenthal firm. The proposed third-party defendants were deprived of their ability to have their counsel present and to lodge objections to the testimony. If these new defendants are added to the case, it is likely that they will object to the use of this testimony at trial.

## VI.     Commonwealth Will Not Be Prejudiced If Its Motion Is Denied

Commonwealth's ability to assert contribution and indemnity claims against the proposed third-party defendants will not be prejudiced if this Court denies its requests to join them in this case. Commonwealth can simply wait and seek to enforce its rights against the third parties in a separate action if U.S. Bank prevails on its claim. See Merchants Ins. Grp.. v. Mitsubishi Motor Credit Ass'n, 03CV6017(DGT)(RLM), 2005 WL 1631145 (E.D.N.Y. July 11, 2005) (Under New York law, claims for contribution and indemnity do not arise until the prime obligation to pay has been established.). Given the expected cost and delay expected to be caused by Commonwealth's third-party claims, it makes far greater sense for Commonwealth to simply reserve those claims until it is determined whether Commonwealth is in fact liable to U.S. Bank. See In re Agent Orange Prod. Liab. Litig., 100 F.R.D. at 781 (E.D.N.Y. 1984) (If Uniroyal is found liable to the plaintiffs, it can sue the proposed third-party defendants for contribution or indemnification. If it is found not liable the prospective third parties will be saved a great deal of expense.")

For the reasons set forth herein, U.S. Bank respectfully asks this Court to deny Commonwealth's motion for leave to asset 10 additional third-party claims.

Case 1:13-cv-07626-NRB Document 24 Filed 07/25/14 Page 7 of 23

Very truly yours,

Rob Shainess
*Attorney at Law*
rob@capstonelaw.com

cc:     David Fiveson, Esq. (By ECF)
        William Yunker (by email)

LAW OFFICES OF

## BORCHERT, GENOVESI & LASPINA, P. C.
A PROFESSIONAL CORPORATION

19-02 WHITESTONE EXPRESSWAY • SUITE 302
WHITESTONE, NEW YORK 11357
TEL (718) 767-3333
FAX (718) 767-3309
E-MAIL - law@bglpc.com

HELMUT BORCHERT
GREGORY M. LASPINA
ANTHONY J. GENOVESI, JR.

STEPHEN J. SMITH
ROBERT W. FROMMER
KARI CAULFIELD
MAYA K. PETROCELLI

ANTHONY J. GENOVESI
(1936-1998)

March 1, 2012

**VIA FACSIMILE: (516) 742-1097**

**And Certified Mail RRR** - # 7011 1150 0000 6235 3904

Stein, Wiener & Roth, L.L.P.
One Old Country Road, Suite 113
Carle Place, NY 11514

Attention:  Robert Sambursky, Esq.

> Re:   Commonwealth Land Title Insurance Company
>        Insured:  U.S. Bank, N.A.
>        Claim Number: 328563
>        Policy Number: K57-0143682
>        Property: 1430 Pinson Street
>        Far Rockaway, New York

Dear Mr. Sambursky:

As you know, this firm represents Commonwealth Land Title Insurance Company ("Commonwealth").  This letter sets forth the facts and analysis of this matter.

### THE MORTGAGE CLOSING

The background facts concerning the closing of your client's mortgage are set forth below.

On January 24, 1986, Paul D. Brown, Inc. conveyed the Premises to Laura Fields by deed which was recorded on February 24, 1986.



EXHIBIT
A

BOR000075

BORCHERT, GENOVESI & LASPINA, P. C.

Robert Sambursky, Esq.
Stein, Wiener & Roth, L.L.P.
March 1, 2012
Page -2-

Information your client provided indicates that Laura Fields died on October 18, 2007. For purposes of simplicity, references to "Laura Fields" will mean the actual Laura Fields or a person purporting to be Laura Fields. It is unknown to Commonwealth whether or when Laura Fields may have died.

On October 18, 2007 the Premises was appraised at $565,000 by Samuel Gluckman, 777 Kent Avenue, #202, Brooklyn, NY 11205, Telephone: 718-943-0600. Supervisory appraiser is Lutti Hamden, Forest Appraisals, 612 49th Street, Brooklyn, NY 11220, Tel. 718-633-4999, says "Did inspect interior and exterior of subject property". Date of inspection was October 18, 2007.

Laura Fields sought to mortgage/refinance the Premises. Your client has provided copies of loan applications dated November 19, 2007 and November 29, 2007. The loan application was prepared by Leah Herskovits of ANM Funding. A November 19, 2007 letter from Laura Fields says the purpose of the loan is for home improvement.

The mortgage which your client claims is insured by Commonwealth is founded on a note from Laura Fields to U.S. Bank, N.A. dated November 29, 2007 for $367,250 and a mortgage from Laura Fields to Mortgage Electronic Registration Systems, Inc. as nominee for U.S. Bank, N.A. also dated November 29, 2007. The insured mortgage was purportedly assigned by MERS to U.S. Bank, N.A. by assignment dated January 8, 2009 and recorded on January 30, 2009. There are no other assignments of record of this mortgage. Lowenthal & Kofman, P.C. represented U.S. Bank, N.A. at the closing of this mortgage as settlement agent and counsel. Sky Abstract, LLC ("Sky") was the policy issuing agent of Commonwealth, and was not Commonwealth's agent for any other purpose in connection with this closing or mortgage. The closing was held at Lowenthal & Kofman's office.

The loan application income reflects monthly income of $6,350.00 but salary.com reflects only $5,098 (revised debt to income ratio of 61.5% is above normal maximum); and we are told that Laura Fields' alleged employer never heard of Laura Fields and didn't have Laura Fields in the employer's records.

The loan application does not list any payoffs, but the file has a payoff letter of $29,520.29 to Vernona McCreath, 1156 Fulton Street, Brooklyn, NY 11216-1829, whose address is a restaurant according to online research, and the HUD-1 reflects a $42,000 payoff to Vernona McCreath. The payoff letter does not state what the debt to Vernona McCreath is for but the records your client provided does have a 'Request for Verification' of rent or mortgage from ANM Funding to Vernona McCreath, dated November 22, 2007 on which McCreath claims to have a mortgage from July 2005 encumbering the Premises. That mortgage is not recorded and no copy of it is in the

·BORCHERT, GENOVESI & LASPINA, P. C.

Robert Sambursky, Esq.
Stein, Wiener & Roth, L.L.P.
March 1, 2012
Page -3-

documents provided.  The  loan application, dated November 29, 2007 shows SSN:
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, Telephone: 718-868-1157, DOB: July 20, 1935, employed by P.S. 195 in
Rosedale, and previously employed by Hot Cakes & Butter group family, 231 Hancock
Street, Brooklyn, NY.

The credit report information you provided appears to be fabricated.  Page 2 is slanted
and has different dates (October 22, 2007 and October 12, 2007).

The file has a December 17, 2007 letter from Laura Fields to Sky that all proceeds
should be given to Isis Sealey and mailed to ANM Funding LLC, 3811 13th Avenue,
Brooklyn, NY 11218, Att: Noach.  No checks or wires payable to "Isis Sealey" were ever
issued.

The loan proceeds were initially distributed from the Lowenthal & Kofman, P.C. Attorney
Trust Account #2 as follows (produced with 7/6/11 letter from your firm):

* check # 17156 to Lowenthal &Kofman, P.C. dated December 4, 2007 for $895.00
* check # 17157 to Norman Tepfer  dated December 4, 2007 for $200.00
* check # 17158 to Sky Abstract LLC  dated December 4, 2007 for $918.13
* check # 17159 to Sky Abstract LLC  dated December 4, 2007 for $40,608.50
* check # 17160 to Sarah Glucksman dated December 4, 2007 for $325.00
* check # 17161 to L. Hershkowitz dated December 4, 2007 for $7,672.50
* check # 17162 to Silberstein Insurance dated December 4, 2007 for $3,369.00
* check # 17163 to S. Klein dated December 4, 2007 for $1,000.00
* HSBC Wire for $305,686.29 to Kanzada Jordan (WaMU Bank).
* HSBC Wire for $15,053.89 to ANM Funding (North Fork Bank)

TOTAL:  $375,728.31

This total is significantly more than the amount of the loan.  According to Sky's title bill,
the mortgage recording tax was $6,580.50.  None of the loan proceeds were made
payable to Laura Fields or even to Isis Sealy.  The large amount of proceeds paid to
Sky are highly unusual and are not accounted for by paying off any prior mortgage or
normal title charges.  The basis for paying Kanzada Jordan, S. Klein and L. Hershkowitz
is not stated in the file.

None of the cancelled closing checks or wire transfers is consistent with the HUD-1
statement except the $895.00 payment to Lowenthal & Kofman.  The HUD-1 which
shows a payoff of $42,000 to Vernona McCreath and also shows slightly more than the
purported cash out amount actually paid to Kanzada Jordan.  The HUD-1 is signed by
Lowenthal & Kofman (which person from that firm is not known) and Laura Fields.  The

BORCHERT, GENOVESI & LASPINA, P. C.

Robert Sambursky, Esq.
Stein, Wiener & Roth, L.L.P.
March 1, 2012
Page -4-

HUD-1 is thus clearly false. No payment to Vernona McCreath was made, the cash out amount is incorrect and was not paid to the borrower or to the person designated by the borrower to receive that money.

We have received copies of eight checks (#2384-2391) each payable to U.S. Bank, N.A. in the amount of $2,443.32 drawn on a Sky account (Sky Abstract, LLC Disbursement Account -07) with Provident Bank. Each check is dated December 10, 2007. No basis for providing these funds to Sky has been provided.

In August 2008, Laura Fields defaulted on the loan. It appears that the above-mentioned checks drawn on Sky's account were being sent to the lender one month at a time until those checks ran out and the loan defaulted. No authorization for Sky to have done this is known to Commonwealth. Sky's agency agreement with Commonwealth did not extend to such payments.

## U.S. BANK, N.A.'s FAILURE TO PRODUCE REASONABLY REQUESTED INFORMATION

An insured has a duty to cooperate with the insurer. Your client's policy provides at paragraph 6 of the Conditions as follows:

6.      DUTY OF INSURED CLAIMANT TO COOPERATE

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title, the lien of the Insured Mortgage, or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend,

prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. **Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.** [emphasis added].

Case law also holds that the insured has a duty to provide reasonably requested information and that a failure to provide that information is grounds for disclaimer. See also, New York Cent. Mut. Fire Ins. Co. v. Rafailov, 41 A.D.3d 603, 840 N.Y.S.2d 358 (2d Dept. 2007). The duty to cooperate includes providing documentation requested by the insurer. See Policy at Conditions, par. 6. See also, New York Cent. Mut. Fire Ins. Co. v. Rafailov, supra; Dore v. Allstate Indemnity Company, 264 A.D.2d 804, 695 N.Y.S 2d 422 (2nd Dept. 1999); Sylvester, Inc. v. Aetna Casualty & Surety Company, 189 A.D.2d 730, 592 N.Y.S. 2d 741 (1st Dept. 1993); Evans v. Int. Ins. Co., 168 A.D. 2d 374, 562 N.Y.S. 2d 692 (1st Dept. 1990); Dyno-Bite, Inc. v. Travelers Companies, 80 A.D.2d 471, 473 (4th Dept. 1981), appeal dismissed 54 N.Y.2d 1027 (1982);

BORCHERT, GENOVESI & LASPINA, P. C.

Robert Sambursky, Esq.
Stein, Wiener & Roth, L.L.P.
March 1, 2012
Page -6-

<u>Bhattacharyya v. Quincy Mutual Fire Insurance Company</u>, 2004 WL 2913895 (Sup. Ct. Queens County 2004).

Your client first made claim by letter dated March 25, 2009.

By letter dated April 8, 2009, Commonwealth requested several documents in connection with the claim.

On May 1, 2009, your firm wrote to Commonwealth and provided what it purported to be the entire origination file but refused to provide the other documents Commonwealth requested.

By letter dated May 6, 2011, this firm wrote to your firm requesting supplemental documents including:

> 1. Cancelled checks, cancelled money orders and wire transfer confirmations for disbursement of proceeds of the loan secured by the insured mortgage.

> 2. Cancelled checks, cancelled money orders and wire transfer confirmations for disbursement by U.S. Bank, N.A.'s settlement agent Lowenthal & Kofman, P.C. of proceeds of the loan secured by the insured mortgage.

> 3. The names, titles, addresses and telephone numbers of the persons and entities who prepared credit searches for U.S. Bank, N.A. in connection with the loan secured by the insured mortgage.

> 4. The names, titles, addresses and telephone numbers of the persons who performed the verification of employment of Laura Fields.

This letter also sought to schedule the examination under oath of U.S. Bank, N.A. and of its settlement agent, Lowenthal & Kofman, P.C.

By June 14, 2011 letter, this firm consented to your request for additional time to respond which was extended on consent to July 6, 2011.

Your client eventually complied in part with this firm's May 6, 2011 demand by letter dated June 16, 2011 letter with enclosures (cancelled checks, wire transfer

BORCHERT, GENOVESI & LASPINA, P. C.

Robert Sambursky, Esq.
Stein, Wiener & Roth, L.L.P.
March 1, 2012
Page -7-

confirmations, November 29, 2007 loan application and verification of employment done
by ANM Funding).

By July 21, 2011 letter from this firm to your firm, we stated we understood the ANM
Funding documents attached to your firm's June 16, 2011 letter were meant to be fully
responsive to items 3 and 4 of this firm's May 6, 2011 letter.  We have not yet had
confirmation if that is what your client intended.

This firm's July 21, 2011 letter also stated that the following items requested in
Commonwealth's April 8, 2009 letter are still outstanding:

> Items 1 (except assignments of mortgage), 2, 3, 4, 5 and 6 from
> first list; and Items 1, 2 (except note itself), 4 (except loan
> application), credit report and the partial copy of the marked up
> report), 5 (except the HUD settlement statement), 6, 7 (except
> checks and correspondence previously provided), 8, 9, 10, 11
> and 12 from the second list.

Your firm sent a July 29, 2011 letter to this firm stating, without specifying, that the
outstanding documentation either does not exist or does not pertain to this claim.  Thus,
it is unclear which documents do not exist and which documents are being refused.

This firm wrote to your firm on August 10, 2011 explaining that documents must
specifically be stated to not exist or be produced and warned (with case citations) of the
consequences of failure to produce reasonably requested documents.  This letter
further stated Commonwealth's intent to thereafter conduct an examination under oath
of U.S. Bank, N.A. and its settlement agent, Lowenthal & Kofman, P.C.

By September 10, 2011 letter, your firm stated that gathering the documents was taking
longer than anticipated.

On September 12, 2011, this firm responded to your September 10, 2011 letter and
requested that you advise how long you will need.  To date, we have not received any
response to this September 12, 2011 letter.

The following documents still remain outstanding: loan transfer files; loan sale purchase
files; instruments securing the loan; securitization documents; documents regarding the
repurchase of the loan; documents relating to third parties to indemnify your client for a
loss sustained on the loan; documents relating to other insurance or indemnity claims
relating to this loan or property; documents reflecting agreements to service the loan;
underwriting guidelines for the type of loan that is the basis of this claim; riders,

Borchert, Genovesi & LaSpina, P. C.

Robert Sambursky, Esq.
Stein, Wiener & Roth, L.L.P.
March 1, 2012
Page -8-

allonges, and endorsements to the note; underwriting files; escrow packages; loan vault files; indemnities; payoff letters (minus the one provided), sales contracts; other title insurance policies; loan disbursement files including information on loan disbursements and procedures and on loan balances for duration of loan; loan modification files; names of due diligence providers employed to review the loan and information created by those providers; loan workout files; foreclosure files; loan payment history; and quality control, quality assurance or similar reports concerning fraud, forgery or non-compliance with loan underwriting guidelines. Please provide your responses.

On October 10, 2011, this firm wrote to your firm advising that you have not yet advised how much time you will need to provide the outstanding documentation and requesting that such information be provided and stating that Commonwealth thereafter intended to conduct an examination under oath of a person knowledgeable of the subject transaction as well as a representative of your client's settlement agent.

To date, we have received no response to that October 10, 2011 letter.

On November 11, 2011, this firm wrote to your firm setting forth the history of this claim, the failure to provide the requested information, the duty to provide the requested information and requesting the outstanding matter and to be advised when we can expect it to be received.

On December 2, 2011, your firm sent this firm an email stating that this firm's letter had been sent to your client for review and that you will advise of their response.

To date, no further response, as indicated in your firm's December 2, 2011 email, has been provided. Therefore, it must be concluded that your client has failed to provide the requested information and documents as required by the policy. See paragraph 6(b) of the Conditions ("....Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim").

Accordingly, Commonwealth denies indemnification for the referenced claim due to U.S. Bank, N.A.'s failure to provide reasonably requested information.

## RESERVATION OF RIGHTS TO DISCLAIM ON ADDITIONAL GROUNDS

BORCHERT, GENOVESI & LASPINA, P. C.

Robert Sambursky, Esq.
Stein, Wiener & Roth, L.L.P.
March 1, 2012
Page -9-

The failure to provide reasonably requested information has also prejudiced Commonwealth's ability to fully investigate and analyze this claim including further facts and legal and contractual grounds to disclaim that cannot be fully determined at this time due to this failure. The limited information that your client has provided suggests that a disclaimer for failure to fund and for a lack of indebtedness would also be appropriate at such time as a fully investigation and analysis was made possible.

## Failure to Fund

For instance, it appears that a substantial portion of the proceeds of the subject loan were distributed to persons with no apparent entitlement to same and not distributed in the manner formally directed by the lender or the borrower or even as indicated on the HUD-1 Settlement Statement and, thus, it further appears that the loan did not properly fund due to the actions of the lender or its settlement agent and that coverage is thereby vitiated. See Fidelity Nat'l Title Ins. Co. of New York v. Consumer Home Mortgage, Inc., 272 A.D.2d 512, 514, 708 N.Y.S.2d 445, 447 (2d Dept. 2000).

The HUD-1 shows a payoff of $43,000 to Verona McCreath but no such payment was actually made. $40,608.50 was paid to Sky Abstract from the loan proceeds but without the borrower's authorization and not for any of Sky Abstract's services as policy issuing agent. A December 17, 2007 letter from Laura Fields in the closing file states that the entire loan proceeds should be paid to Isis Sealey but none of the proceeds were paid to Isis Sealey and $305,686.29 of the proceeds were actually paid to Kanzada Jordan without any authority for same. The HUD-1 statement also shows a $305,927.79 payment of "cash to borrower" which was never actually made and shows payments to ANM Funding that were never made. Thus, the HUD-1 statement signed by your client's settlement agent appears to be substantially inaccurate and almost all of the loan proceeds were disbursed to various payees without any authority for those payments.

The $305,686.29 payment by your client's settlement agent/closing attorney to Kanzada Jordan cannot be considered proper funding of the loan with the limited information provided. That payment was not made to anyone authorized by the borrower to receive it and not even made to anyone with any interest in the subject real property or the transaction. Thus, it currently appears that the loan did not fund and your client did not give value for its mortgage due to the actions of your client's settlement agent/closing attorney. Fidelity Nat'l Title Ins. Co. of New York v. Consumer Home Mortgage. Inc., 272 A.D.2d 512, 514, 708 N.Y.S.2d 445, 447 (2d Dept. 2000).

The $40,608.50 payment to Sky also does not appear to proper funding of the loan. It is clear that Sky was solely a policy issuing agent of Commonwealth, was not authorized

BORCHERT, GENOVESI & LASPINA, P. C.

Robert Sambursky, Esq.
Stein, Wiener & Roth, L.L.P.
March 1, 2012
Page -10-

to accept any funds in escrow, and was not authorized to issue any policy based upon any escrow deposit. The language of the Agency Agreement is clear and unambiguous. Your client was at its own peril when your client, through its closing attorneys/settlement agent, decided to entrust Sky beyond the scope of Sky's limited agency relationship with Commonwealth. Countrywide Home Loans, Inc. v. LaFonte, 2003 WL 1389089 (Sup. Nassau, 2003); HSA Residential Mortgage Services of Texas v. Stewart Title Guar. Co., 7 A.D.3d 426, 776 N.Y.S.2d 791 (1st Dept. 2004); Fidelity Nat'l Title Ins. Co. of N.Y. v. Consumer Home Mortg., Inc., 272 A.D.2d 512, 708 N.Y.S.2d 445 (2d Dept. 2000).

Use by a title insurer's agent of the title insurer's name does not cloak the agent with apparent authority to act as the insurer's agent in escrow, settlement or closing transactions. See HSA Residential Mortg. Serv. of Texas v. Stewart Title Guar. Co., 7 A.D.3d 426, 427, 776 N.Y.S.2d 791 (1st Dep't 2004); Countrywide Home Loans. Inc. v. Lafonte, No. 14265/01,2003 WL 1389089 at *3 (Sup. Ct. Nassau Co. Feb. 12, 2003); Resolution Trust Corp. v. American Title Ins. Co., 901 F. Supp. 1122, 1124 (M.D. La. 1995); Security Union Title Ins. Co. v. Citibank. N.A., 715 So. 2d 973, 975 (Fla. Dist. Ct. 1998); Cameron County Sav. Ass'n v. Stewart Title Guar. Co., 819 S.W. 2d 600, 602-05 (Tex. App. Ct. 1991); Bodell Constr. Co. v. Stewart Title Guar. Co., 945 P.2d 119, 124-25 (Utal1 Ct. App. 1997). The "mere fact that [a title underwriter] has issued title insurance policies for transactions in which [its title agent also] participated as an escrow or closing agent does not, without more, make [the title agent] the apparent agent of [the title insurance company]" for its escrow activities. National Mortg. Warehouse, LLC v. Bankers First Mortg. Co., 190 F. Supp. 2d 774, 781 (D. Md. 2002). See also Bodell Constrs. Co., 945 P.2d at 124-25 (title insurer did not give its agent implied authority to act as the insurer's agent while performing collateral acts of escrow, settlement and closing transactions by giving it expressed authority to issue title policies).

For example, in HSA Residential Mortgage Services, the plaintiff sought to hold several title insurance companies responsible when its policy issuing agent, which was also acting as settlement agent for the banks and responsible for the disbursement of loan proceeds, stole the funds from closings and did not use the banks' money to pay off prior mortgages. The New York appellate court for the First Department found that the settlement agent did not have express authority to act for the title insurers other than to issue title policies. 7 A.D. 3d at 427,776 N.Y.S.2d at 791. Further, the court found that there were no words or conduct by the title insurers "that could have caused plaintiff [the lender] to believe that their function involved more than the issuance of title insurance policies, such as might warrant holding them responsible for the misappropriated mortgage funds under the doctrine of

BORCHERT, GENOVESI & LASPINA, P. C.

Robert Sambursky, Esq.
Stein, Wiener & Roth, L.L.P.
March 1, 2012
Page -11-

apparent authority." Id. As such, the court held that the title insurers were not liable for the escrow activities of their policy issuing agent.

Similarly, in Countrywide Home Loans, Inc. v. Lafonte, the plaintiff claimed that the title company was vicariously liable for the acts of the title company's policy issuing agent, which also acted as escrow agent for the lender and failed to pay off the prior mortgage at a closing. The court, explaining the role of a title company at closings, held that "Columbia Abstract was not acting under an expressed grant of authority from Stewart Title when it performed any acts at the closing other than issuing the title insurance policy in question." No. 01-14265, 2003 WL 1389089, at *3 (Sup. Ct. Nassau Co. Feb. 12, 2003). The court further found that "[n]o word or deed on the part of Stewart Title has been identified whereby it could be inferred that Stewart Title's function at the closing was more than just issuing the title policy."19.., As such, Stewart Title was not held liable for the acts of the abstract company. id. at *4.

Moreover, if the loan failed to fund, there would correspondingly be no indebtedness upon which the mortgage can be based and your client would have correspondingly failed to give value for the mortgage. Fidelity Nat'l Title Ins. Co. of New York v. Consumer Home Mortgage, Inc., 272 A.D.2d 512, 514, 708 N.Y.S.2d 445, 447 (2d Dept. 2000).

As shown above, it appears from the limited information provided that the loan failed to fund and your client failed to give value for its mortgage due the actions of your client's settlement agent/closing attorney. Such a failure to fund and give value is grounds to disclaim under Paragraph 3, subparagraphs (a) and (e) of the Exclusions From Coverage portion of the policy which excludes from coverage, in pertinent part:

> 3. Defects, liens, encumbrances, adverse claims, or other matters
> (a) created, suffered, assumed, or agreed to by the Insured Claimant;

* * *

> (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the insured Mortgage.

## Lack of Indebtedness

Due to the actions of your client's settlement agent/closing attorney, the vast majority of the proceeds of the subject loan were distributed to persons with no apparent

Borchert, Genovesi & LaSpina, P. C.

Robert Sambursky, Esq.
Stein, Wiener & Roth, L.L.P.
March 1, 2012
Page -12-

entitlement to same and not distributed in the manner formally directed by the lender or the borrower or even as indicated on the HUD-1 Settlement Statement. Thus, with the limited information provided, there appears to be no indebtedness upon which to premise the mortgage. See Fidelity Nat'l Title Ins. Co. of New York v. Consumer Home Mortgage. Inc., 272 A.D.2d 512, 514, 708 N.Y.S.2d 445, 447 (2d Dept. 2000).

The HUD-1 shows a payoff of $43,000 to Verona McCreath but no such payment was actually made. $40,608.50 was paid to Sky from the loan proceeds but without the borrower's authorization and not for any of Sky's services as policy issuing agent. Thus, from the limited information provided, the $40,608.50 payment to Sky cannot be considered indebtedness secured by the mortgage.

A December 17, 2007 letter from Laura Fields in the closing file states that the entire loan proceeds should be paid to Isis Sealey but none of the proceeds were paid to Isis Sealey and $305,686.29 of the proceeds were actually paid to Kanzada Jordan without any authority for same. The HUD-1 statement also shows a $305,927.79 payment of "cash to borrower" which was never actually made and shows payments to ANM Funding that were never made. Thus, the HUD-1 statement signed by your client's settlement agent appears to be substantially inaccurate and all, or almost all, of the loan proceeds were disbursed to various payees without any authority for those payments which indicates, from the limited information provided, that those funds cannot be considered indebtedness secured by the mortgage.

From the limited information provided, the $305,686.29 payment by your client's settlement agent/closing attorney to Kanzada Jordan does not appear to be an indebtedness secured by the mortgage. That payment was not made to anyone authorized by the borrower to receive it and not even made to anyone with any interest in the subject real property or the transaction.

If Commonwealth were given the opportunity to conduct a full investigation as permitted by the policy and it was determined, as the limited information provided suggests, that there is no indebtedness upon which the mortgage can be based, the mortgage itself would have to be deemed vitiated (due to the actions of your client's settlement agent/closing attorney) which, in turn, would vitiate the policy. Fidelity Nat'l Title Ins. Co. of New York v. Consumer Home Mortgage, Inc., 272 A.D.2d 512, 514, 708 N.Y.S.2d 445, 447 (2d Dept. 2000) ("Thus, the court properly determined that where there is no underlying debt, there is no valid mortgage, and that the loan policies purportedly insuring said mortgages were not valid or enforceable"). This would also mean that value was not given by your client for the mortgage.

BORCHERT, GENOVESI & LASPINA, P. C.

> Robert Sambursky, Esq.
> Stein, Wiener & Roth, L.L.P.
> March 1, 2012
> Page -13-

If the mortgage and the policy were vitiated for lack of indebtedness due to the actions of your client's settlement agent/closing attorney, there would be grounds to disclaim under Paragraph 3, subparagraphs (a) and (e) of the Exclusions From Coverage portion of the policy which excludes from coverage, in pertinent part:

> 3.  Defects, liens, encumbrances, adverse claims, or other matters
> (a) created, suffered, assumed, or agreed to by the Insured Claimant;

*   *   *

> (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the insured Mortgage.

Therefore, Commonwealth expressly reserves the right to further deny indemnification for the referenced claim that the withheld information and examinations under oath may reveal including but not limited to denial of indemnification on the grounds of failure to fund, failure to give vale for the loan and failure to have an underlying indebtedness.

## CONCLUSION

For the reasons set forth above, Commonwealth denies indemnification for the referenced claim and reserves the right to deny indemnification on additional grounds if when Commonwealth should have the means and the requirement to complete a full investigation and analysis of this matter.

Very truly yours,

Helmut Borchert

HB:djt

cc:   Debra Smith, Esq. (via email)

BOR000087

**Rob Shainess**

| | |
|---|---|
| **From:** | David Fiveson |
| **Sent:** | Thursday, January 09, 2014 2:53 PM |
| **To:** | Rob Shainess; Michailidis, Evangelos |
| **Cc:** | Claudia Jaffe |
| **Subject:** | 14-01-09 to Rob Shainess RE: US Bank v. Commonwealth (13-cv-7626) our file 2575 6016 |

Rob:

We will need to depose the title and settlement agents. Fay Farkas, Sky Abstract and Lowenthal & Kofman engaged in fraud. I do not anticipate their being cooperative. I deposed Fay Farkas in another case and I required a contempt order for her to appear.

I have trials scheduled and I do not want to box myself into a tight discovery schedule.

On another issue, my client wants any alternate dispute resolution process to be before a magistrate (paragraph 12).

David K. Fiveson
Butler Fitzgerald Fiveson & McCarthy, P.C.
9 East 45th Street
Ninth Floor
New York, New York 10017
212-615-2200 (office)
914-260-6747 (cell)
212-615-2215 (fax)
dfiveson@bffmlaw.com
www.bffmlaw.com

---

**From:** Rob Shainess [mailto:rob@capstonelaw.com]
**Sent:** Thursday, January 09, 2014 12:06 PM
**To:** David Fiveson; Michailidis, Evangelos
**Cc:** Rob Shainess; Claudia Jaffe
**Subject:** RE: 14-01-08 to plaintiff's counsel RE: US Bank v. Commonwealth (13-cv-7626) our file 2575 6016

David,

I think we are scheduled to discuss these issues tomorrow afternoon. While we can certainly discuss it further, I can't imagine why we would need 6 months of discovery for this case, particularly since U.S. Bank has already provided your client with voluminous information in support of the original claim. In addition, I would prefer to have fact discovery and depositions completed in advance of the expert disclosure deadline, rather than have those deadlines at the same time.  How about we meet in the middle: Make the deadline for fact discovery May 30, and the deadline for expert disclosures June 30?

Rob Shainess
*Attorney at Law*



EXHIBIT
B

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
US BANK, NATIONAL ASSOCIATION,

                       Plaintiff,

      v.

COMMONWEALTH LAND TITLE INSURANCE
COMPANY,

                       Defendant.
-------------------------------------------------------------------X

**MANDATORY
DISCLOSURE
PURSUANT TO FRCP
26(a)(1) and (2)**

13-civ-7626 (NRB)

Defendant Commonwealth Land Title Insurance Company ("Commonwealth"),

as and for its mandatory disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) and (2)

states the following:

## DISCLOSURE PURSUANT TO LOCAL RULE 26.1

### WITNESSES

1. Sky Abstract c/o Fay Farkas
   Last known address:
   235 North Main Street, Suite 2
   Spring Valley, NY 10977
   (845) 371-5200

2. Lowenthal & Kaufman
   2001 Flatbush Avenue
   Brooklyn, NY 11234

3. Vernon McCreath
   1156 Fulton Street
   Brooklyn, NY 11216

4. Norman Tapfer
   [Address unknown]

5. Kim Stewart
   c/o Mers
   Owensboro, Kentucky

6. John Doe a/k/a Tzivy Herskowitz
   c/o ANM Funding LLC
   3811 13th Avenue
   Brooklyn, NY 11218
   (718) 907-4301

7. Samuel Gluckman
   777 Kent Avenue, #202
   Brooklyn, NY 11205
   (718) 943-0600

8. Luti Hamden
   Forest Appraisals
   612 49th Street
   Brooklyn, NY 11220
   (718) 633-4999



EXHIBIT
C

9.  Robert Sambursky, Esq.
    Stein Wiener & Roth, LLP
    One Old Century Road
    Suite 113
    Carle Place, NY   11514
    (516) 742-1212

10. Blimi G.
    c/o Sky Abstract
    235 North Main Street
    Suite 2
    Spring Valley, NY   10977
    (845) 371-5200

11. Sarah Glucksman
    [Address unknown]

12. L. Herskowitz
    [Address unknown]

13. S. Klein
    [Address unknown]

14. Rapid Examiners, Inc.
    (718) 930-4984

## EXPERT DISCLOSURE

Commonwealth has not retained any expert to date.

## INSURANCE DISCLOSURE

There is no insurance coverage.

## DOCUMENT DISCLOSURE

See bate stamp documents nos. 1 through 1034 provided herewith.

Dated: New York, New York
~~January 28, 2014~~

BUTLER, FITZGERALD, FIVESON
  & McCARTHY
A Professional Corporation
  Attorneys for Defendant
  Commonwealth Land Title Insurance Company

By: _____
        David K. Fiveson
A Principal of the Firm
Nine E. 45th Street, Ninth Floor
New York, New York   10017
(212) 615-2200

2