# EXHIBIT C

To DKF,
JL
from CJS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

U.S. BANK, NATIONAL ASSOCIATION,

        Plaintiff,

  - against -

COMMONWEALTH LAND TITLE INSURANCE
COMPANY,

        Defendant, and
        Third-Party
        Plaintiff,

  - against -

ANM FUNDING LLC, ABE KLEIN, NOAH
HERSHKOVITZ, LEAH HERSHKOVITS,
TSVINY HERSHKOVITZ, LOWENTHAL &
KOFMAN, P.C., MARTIN KOFMAN,
NORMAN TEPFER, SAMUEL GLUCKMAN,
and ROLAND FIELDS,

        Third Party Defendants.

------------------------------------X

**MEMORANDUM AND ORDER**

13 Civ. 7626 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Presently before the court is a motion on behalf of third-party defendants Lowenthal & Kofman, P.C., Martin Kofman, and Norman Tepfer (collectively, the "Lowenthal defendants") to dismiss the third-party complaint brought by defendant/third-party plaintiff Commonwealth Land Title Insurance Company ("Commonwealth"). For the reasons stated herein, this motion is granted.

**BACKGROUND**

I.   **Factual Background**

On November 29, 2007, plaintiff U.S. Bank National Association ("U.S. Bank") made a loan to Laura Fields, the repayment of which was to be secured by a mortgage on Fields's property. TPC ¶ 13. At the closing of the loan and mortgage, Commonwealth issued U.S. Bank a loan policy insuring the mortgage as a first lien and indemnifying U.S. Bank against losses suffered as a result of title defects. Id. ¶ 22; Cmplt. ¶¶ 16-26. However, unbeknownst to both parties, Laura Fields had in fact died one month before the closing, and her November 2007 mortgage had been signed by an imposter--a fact U.S. Bank first discovered nearly two years later, when it unsuccessfully attempted to foreclose on the mortgage after Fields appeared to default in March 2009. TPC ¶ 20; Cmplt. ¶¶ 27-29. U.S. Bank consequently submitted a title insurance claim to Commonwealth, which Commonwealth denied on March 1, 2012. Cmplt. ¶¶ 31, 33.

Commonwealth alleges that fraud on the part of several third-party defendants allowed Fields's death to go undetected and her mortgage to be signed by an imposter. Specifically, Commonwealth alleges that, before the closing, U.S. Bank's mortgage broker and several of its employees submitted false credit reports, false employment verifications, and a false property appraisal in order to induce U.S. Bank to make the loan. TPC ¶ 14. At the closing,

Norman Tepfer, a notary and agent of Lowenthal & Kofman, which acted as U.S. Bank's settlement agent at the closing, allegedly fraudulently acknowledged the imposter's signature as Fields's. Id. ¶ 21. Finally, according to Commonwealth, the Lowenthal defendants submitted a false HUD-1 after the closing, knowingly omitting the payment of proceeds to third party who is believed to have laundered the funds. Id.

## II. Procedural Background

U.S. Bank filed a complaint on October 28, 2013, alleging that Commonwealth breached its insurance contract with U.S. Bank by denying U.S. Bank's claim, and Commonwealth answered on December 13, 2013. On July 17, 2014, after a period of discovery, Commonwealth sought leave to implead parties from whom it sought indemnification, citing the recent disclosure of a document regarding loan disbursement as the basis for the delayed impleader. On August 6, 2014, we issued an order granting Commonwealth's motion, and on August 11, 2014, Commonwealth filed a third-party complaint (the "TPC") seeking contribution and/or indemnification from several third-party defendants, including the Lowenthal defendants. The Lowenthal defendants moved to dismiss the TPC on December 24, 2014, and the motion was fully briefed on February 5, 2014.

## DISCUSSION

### I. Legal Standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor. Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009); Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007). A motion to dismiss may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Still v. DeBuono, 101 F.3d 888, 891 (2d. Cir. 1996). Nevertheless, a plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," and if a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." Twombly, 550 U.S. at 570. This pleading standard applies in "all civil actions." Iqbal, 556 U.S. at 684 (internal quotation marks omitted).

4

## II. Analysis

### A. Contribution

First, the Lowenthal defendants assert that the TPC fails to state a claim for contribution because, under N.Y. C.P.L.R. § 1401, parties may not seek contribution for purely economic loss and thus may not seek contribution where, as here, the underlying action is one for breach of contract. See Conestoga Title Ins. Co. v. ABM Title Servs., Inc., 10 Civ. 3017 (CM), 2012 WL 2376438, at *6 (S.D.N.Y. June 20, 2012) (holding that, under New York law, "a contribution claim is not available to one . . . potentially liable only for breach of contract" and that "there is no contribution available if the measure of damages is purely economic").[1] Commonwealth concedes that its claim for contribution is not available under New York law. See Def's Br. at 6. Commonwealth's claim for contribution is thereby dismissed.

---

[1] See also Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley, 517 N.E.2d 1360, 1364 (N.Y. 1987) ("We find nothing in the legislative history or the common-law evolution of the statute on which to base a conclusion that CPLR 1401 was intended to apply in respect to a pure breach of contract action such as would permit contribution between two contracting parties whose only potential liability to the plaintiff is for the contractual benefit of the bargain."); Trump Vill. Section 3, Inc. v. New York State Hous. Fin. Agency, 764 N.Y.S.2d 17, 23 (App. Div. 1st Dep't. 2003) ("Where a plaintiff's direct claims against a codefendant seek only a contractual benefit of the bargain recovery, [even] tort language notwithstanding, contribution is unavailable.").

### B. Indemnification

Second, the Lowenthal defendants argue that the TPC fails to state a claim for indemnification because Commonwealth cannot be found liable to U.S. Bank without having been found itself at fault, thereby barring it from receiving indemnification.

In the absence of contractual right to recovery--which neither party has here asserted--a "party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine [of implied indemnification]." 17 Vista Fee Assoc. v. Teachers Ins. And Annuity Ass'n of Am., 259 A.D.2d 75, 80 (App. Div. 1st Dep't 1999). See also Monaghan v. SZS 33 Associates, L.P., 73 F.3d 1276, 1285 (2d Cir. 1996) ("New York case law supports a proposition . . . that common-law indemnity is barred altogether where the party seeking indemnification was itself at fault . . . ."); id. (citing Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs., 492 N.Y.S.2d 371, 375 (App. Div. 1st Dep't. 1985) ("Since the predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine.")).

Consequently, where the underlying action is one for breach of contract, a defendant may not seek indemnification because the defendant, if found liable to the plaintiff in the underlying

6

action, will have necessarily participated in the wrongdoing by breaching the contract. See, e.g., Knight v. H.E. Yerkes & Associates, Inc., 675 F. Supp. 139, 143 (S.D.N.Y. 1987) ("[Where] the underlying action sounds in contract, not in tort, there is no possible set of facts on which it can be true that [the defendant] was not at least partially responsible for harm, for it was [the defendant] that allegedly breached the contract, not [the third-party defendant]. There can therefore be no cause of action in indemnity."); Intesa Sanpaolo S.p.A. v. Piliero, 08 Civ. 2223 (LLS), 2008 WL 3465032, at *1 (S.D.N.Y. Aug. 12, 2008) ("New York law bars [defendant's] claims against the third-party defendants for contribution and non-contractual indemnification because the claim against him is for breach of contract, not a tort."); Highland Capital Mgmt., L.P. v. Schneider, 533 F. Supp. 2d 345, 354-55 (S.D.N.Y. 2008) (PKL) ("Fatal to the [defendants'] implied-in-law indemnification claim is that the underlying claim by [the plaintiff] sounds in contract, and not tort. . . . [I]f the jury ultimately finds that [defendants breached a contract], the [defendants] cannot be indemnified by [the third-party defendant]."); Amusement Indus., Inc. v. Stern, 693 F. Supp. 2d 319, 326-27 (S.D.N.Y. 2010) (LAK) ("Indemnity is not available here [because u]nder New York law, indemnification is not available where the party seeking indemnification was 'partially at fault' or 'responsible in any degree' . . . . [W]hile Stern asserts he

7

was 'duped' by Egert and did nothing wrong, the third-party complaint does not provide a scenario under which Stern could be found both free from fault and at the same time liable for damages to Amusement because of Egert. In other words, Stern has not explained how he could be found vicariously liable--or liable in any other way imputed by law--because of his relationship with Egert. Accordingly, Stern has not stated a claim for indemnity against Egert.").

The TPC, which seeks indemnification for an underlying breach of contract, thus necessarily fails to state a claim for indemnification. Because Commonwealth must have itself breached the contract to have been found liable to U.S. Bank, it cannot be said to have incurred damages purely as a result of vicarious liability or by operation of law. As a result, the TPC does not provide a scenario under which Commonwealth could be found both liable for damages to U.S. Bank and at the same time free from fault, thereby barring Commonwealth from receiving the benefit of implied indemnification.

Notably, Commonwealth does not rebut this principle, but rather reasserts that Commonwealth is entitled to indemnification as a result of Tepfer's wrongful notarization of the imposter's signature. Specifically, Commonwealth argues that Tepfer is liable--and the other Lowenthal defendants are vicariously liable--in indemnification to Commonwealth pursuant to N.Y. Exec. Law §

135, which states that a notary will be liable to a party for any damages caused by his misconduct if the party can show both notarial misconduct and that such misconduct was the proximate cause of the party's injury. It also asserts more generally that Commonwealth is entitled to indemnification from the Lowenthal defendants because they "participated in a conspiracy to defraud plaintiff and cause a forged signature of an imposter to be acknowledged on a mortgage." Def's Br. at 1.

However, as the Lowenthal defendants counter, Commonwealth provides no basis on which to conclude that the law barring Commonwealth's indemnification claim--namely, that Commonwealth cannot be both liable to U.S. Bank and free from fault and therefore cannot seek indemnification--has been abrogated in the context of notarial misconduct or third-party fraud. None of the cases cited by Commonwealth in support of its position controvert the principle that participation in wrongdoing, and specifically liability for an underlying breach of contract claim, will bar indemnification. See, e.g., Plemmenou v. Arvanitakis, 833 N.Y.S.2d 596 (App. Div. 2nd Dep't. 2007) abrogated on other grounds by Butler v. Catinella, 58 A.D.3d 145 (App. Div. 2008) (permitting indemnification based on a notary's misconduct where the plaintiff sought to declare a lien held by the bank void, because the action--for rescission rather than breach of contract--could have resulted in the bank incurring damages in a judgment for the

9

plaintiff without the bank having been found at fault); In re Lowbet Realty Corp., 981 N.Y.S.2d 285 (Sup. Ct. 2014) (permitting indemnification based on allegations of third-party fraud where the statute governing the underlying action permitted rescission without a finding of fault). Indeed, several of the cases cited by Commonwealth expressly affirm the principle that a defendant's claim for indemnification will not lie if the defendant's liability is more than vicarious. See In re Lowbet Realty Corp., 981 N.Y.S.2d at 292-93 ("If [defendant] is found liable to petitioner for rescission based on fraud, it would not be able to obtain indemnification, since its loss would result from its own culpability in the transfer of title in violation of petitioner's rights. Under such circumstances, [its] liability would not be only vicarious, and [it] would not be entitled to indemnification. [However], the statutory claims for rescission and an accounting pursuant to Business Corporation Law § 1114 [brought here] may, in effect, impose vicarious liability on [defendant] . . . because section 1114 does not require the court to find the recipient of the corporate property at fault before setting aside a sale."); Am. Home Assur. Co. v. Nausch, Hogan & Murray, Inc., 897 N.Y.S.2d 413 (2010) ("[T]he record is sufficient at this juncture to support a theory that plaintiffs' liability was vicarious only, and therefore an indemnity claim is appropriate."). Thus, the

wrongdoing limitation on indemnification still applies and Commonwealth's claim for indemnification must be dismissed.

Although we are obligated under this precedent to dismiss the TPC, we recognize that dismissal of Commonwealth's recourse to third parties poses a harsh prospect, which could result in injustice to Commonwealth should Commonwealth be found liable to U.S. Bank purely as a result of third parties' fraud or misconduct and through no fault of its own. However, our dismissal of Commonwealth's claims for contribution and indemnification does not necessarily preclude Commonwealth from pursuing direct claims against the third-party defendants, either for violation of Exec. Law § 135 or more generally for fraud.[2] It should be clear that we intend to express no view on the ultimate merits of any such claim(s).

---

[2] While the Lowenthal defendants suggest that such claims would be untimely, it is not yet apparent that either claim would in fact be time-barred. Actions for both fraud and violations of Section 135 are governed by a six-year statute of limitations, see N.Y. C.P.L.R. § 213; Bank of New York Fin. Corp. v. Mitchell-B.J. Ltd., 634 N.Y.S.2d 486, 487 (App. Div. 1st Dep't. 1995), such that claims here would be untimely if measured from the date of the loan and notarization, in November 2007. However, claims for fraud may run from discovery of the alleged fraud rather than from the date of notarization. See N.Y. C.P.L.R. § 213(8) ("[T]he time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it."). Likewise, case law suggests that a cause of action under § 135 will not accrue until injury, i.e. the party has parted with its money. See, e.g., Marine Midland Bank, N.A. v. Stanton, 556 N.Y.S.2d 815, 817 (Sup. Ct. Monroe Cnty. 1990) ("Section 135 of the Executive Law creates a cause of action for persons injured by reason of notarial misconduct. By its very language there is no cause of action absent injury. Therefore, it follows that the misconduct is not the triggering factor for computation of the statute of limitations, but rather the injury."). As a result, Commonwealth may yet be able to bring such claims against third-party defendants.

## CONCLUSION

For the aforementioned reasons, the motion to dismiss is granted. This Memorandum and Order resolves Docket Nos. 103 and 104.

SO ORDERED.

Dated:   New York, New York
         March 23, 2015

*[signature]*
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum & Order have been mailed on this date to the following:

Jeffrey J. Cunningham, Esq.
Wilson, Elser, Moskowitz,
   Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017-5639

David K. Fiveson, Esq.
Butler, Fitzgerald, Fiveson & McCarthy
9 East 45th Street, 9th Floor
New York, NY 10017

Robert J. Shainess, Esq.
Capstone Law, LLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 1720
Minneapolis, MN 55402

Avinoam Y. Rosenfeld
Rosenfeld Law Office
156 Harborview South
Lawrence, NY 11559

Leopold Gross, Esq.
Law Office of Solomon E. Antar
26 Court Street, Suite 1200
Brooklyn, NY 11242